FILED

SEP 2 5 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ARTURO RODRIGUEZ<br>*Plaintiff* | § § § § § | |
| vs. | § § § | Case No. **DR 25 CV 0074** |
| CITY OF DEL RIO,<br>RICK ROMAN-POLICE CAPTAIN,<br>JOHN DOE-POLICE OFFICER<br>FRANK RAMIREZ-CHIEF OF POLICE<br>*Defendants* | § § § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Arturo Rodriguez, and files this Original Complaint for violations of his civil rights under **42 U.S.C. § 1983**, and would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States.

2.      Venue is proper in the Western District of Texas, Del Rio Division, under 28 U.S.C. § 1391(b), because the events giving rise to these claims occurred in Del Rio, Texas, and the Defendants reside or conduct business in this District.

## PARTIES

3.  Plaintiff Arturo Rodriguez is a resident of Del Rio, Val Verde County, Texas.

4.  Defendant City of Del Rio is a municipality organized under the laws of Texas and may be served through its City Attorney at 109 W. Broadway, Del Rio, Texas 78840.

5.  Defendants Captain Rick Roman is a police officer employed by the Del Rio Police Department; Chief Frank Ramirez is a police officer employed by the Del Rio Police Department.  Both defendants are sued in their individual capacity and may be served at their place of employment, 101 Lowe Drive, Del Rio, Texas 78840.

6.  Defendant John Doe is an unknown officer of the Del Rio Police Department. Plaintiff will amend the complaint to substitute this Defendant's real name once discovered.

## FACTS

7.  Plaintiff Rodriguez had previously reported a traffic violation, on or about September 2023, committed by a local private school, located across from the county courthouse at 209 Greenwood. Plaintiff Rodriguez called the school and advised them that blocking the street was not allowed without a permit. *Attached hereto and incorporated herein by reference as Exhibit J.* Assistant principal Sally Zuniga stated it was for the safety of the

children. Plaintiff Rodriguez advised her it was illegal to do so. The assistant principal angrily stated, "call the police then".

8. Plaintiff Rodriguez, called the police and upon their arrival, they indeed confirmed that the traffic cones fell under "obstruction of the roadway".

9. The officer made the school aware, and the traffic cones were removed by the school, and the issue was resolved.

10. On October 2, 2023, Plaintiff Arturo Rodriguez was traveling on Losoya Street; the road leading to downtown area was closed due to a city crew working. Plaintiff Rodriguez rerouted and drove towards the downtown area on Greenwood Street.

11. As Plaintiff Rodriguez approached the area of the school, he again noticed the traffic cones blocking the street.

12. Plaintiff Rodriguez called the Del Rio Police Department and explained the reason for his call.

13. Plaintiff Rodriguez requested to speak with an officer but was informed that none were available. Dispatched advised Plaintiff Rodriguez that a supervisor would call him.

14. Sergeant Hartwick returned Plaintiff Rodriguez call. Plaintiff Rodriguez explained to sergeant Hartwick the situation and the Sergeant stated, "what the fuck do you want do you want me to do; we have already addressed that".

15. Plaintiff Rodriguez stated, "I want you to enforce the law".

16. Sergeant Hartwick, then hung up the phone.

17. Plaintiff Rodriguez, disappointed with the lack of enforcement and the unprofessional behavior by Sergeant Hartwick, decided to personally file and report a complaint.

18. Plaintiff arrived at the DEL RIO POLICE DEPARTMENT and informed the clerk / secretary that he was there to file a complaint. Plaintiff Rodriguez was made to wait in the lobby for approximately 10-15 minutes. Defendant Rick Roman, then serving as a captain with the Del Rio Police Department, was the official that met with Plaintiff Rodriguez. Plaintiff was invited into the office to the left of the hallway from the lobby.

19. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 7 through 16 as though fully set forth herein.

20. Defendant Roman at no time advised, instructed, ordered or mentioned that the use of electronic devices was not permitted in the area.

21. Defendant Roman stated in the meeting that the school had requested signs, but it just took time. Plaintiff Rodriguez replied that he knew it took time but if it is not official the cones cannot be out on the street, or can anyone block the street if they want. Defendant then stated "whatever I say is not going to make you happy"; Defendant Roman stood up walked out the office and turned off the lights.

22. Plaintiff Rodriguez in disbelief of the administrators' actions and behavior stated, "I need to record this".

23. Defendant Roman then reached for Plaintiff Rodriguez' left arm and Plaintiff Rodriguez pulled it away. Defendant Roman then entered the office and grabbed Plaintiff Rodriguez by the left arm and then proceeded to walk

behind him and pushed him out of the office and into the hallway. An unidentified plain clothes person was present in the hallway. Defendant Roman, once in the hallway grabbed Plaintiff Rodriguez from behind and grabbed him by both arms and forcefully pushed Plaintiff Rodriguez from the hallway into the lobby. *Attached hereto and incorporated herein by reference as Exhibit B & Exhibit M*. Plaintiff Rodriguez felt immediate pain in his left shoulder. He stayed in the lobby pretending to record since he never had the opportunity to turn on his camera. Plaintiff Rodriguez repeatedly requested an officer or a supervisor. One female clerk made the comment "I saw you hit the captain". Female refused to identify herself and the department refused to identify her.

24.    Plaintiff Rodriguez left the lobby and returned because he knew this was not right or legal. Plaintiff Rodriguez commented that he needed to file a report against the captain to a male clerk. The unidentified male clerk then asked Plaintiff Rodriguez if he was hurt and if he needed an ambulance. To which Plaintiff Rodriguez stated "yes". An ambulance arrived and evaluated Plaintiff Rodriguez and recommended he go to the hospital. While Plaintiff was being treated in the police lobby at no time did any law enforcement staff member ever come out. Plaintiff Rodriguez agreed and was encouraged by the EMT to be transported to the hospital via ambulance, as a precaution.

25.    Plaintiff Rodriguez was examined and continued with pain and difficulty moving in his left shoulder. While at the hospital Plaintiff Rodriguez placed a 911 call and requested an officer to take a report. Dispatch stated that an

officer was on the way to his location. Plaintiff Rodriguez was in the hospital for 2-3 hours and no officer ever arrived to take a report.

26. Plaintiff Rodriguez was given an x-ray and was negative for broken bones and was recommended to get an MRI. *Attached hereto and incorporated herein by reference as Exhibit O.*

27. Plaintiff Rodriguez continued with pain and lack of movement to his left arm since the pain from the grab, pull and shove. Plaintiff Rodriguez' MRI revealed a torn rotator cuff by Dr. Geoffrey Millican. *Attached hereto and incorporated herein by reference as Exhibit N.* Plaintiff Rodriguez was then scheduled for surgery on June 4, 2024. *Attached hereto and incorporated herein by reference as Exhibit C & Exhibit D.* Plaintiff Rodriguez to this date suffers from pain and limited movement and is on daily pain medication.

28. The Del Rio Police Department has had zero contact and zero investigation on the incident.

29. Plaintiff Rodriguez was told by dispatch on October 2, 2024, that Internal Affairs would contact him to take his statement. After the passage of time and no contact, Plaintiff Rodriguez filed his own complaint with the Del Rio Police Department as well as all the city council members, mayor, city manager and assistant city manager. NO ONE HAS EVER RESPONDED, INQUIRED OR ADDRESSED THE MATTER. *Attached hereto and incorporated herein by reference as Exhibit I.*

30. On October 5, 2025, no parking signs were placed at 209 Greenwood. Plaintiff Rodriguez had business at the courthouse again and he parked in

the very corner of the school because cones were again at the front of the school. Upon coming out of the courthouse approximately 2 hours; new signs were placed, and Plaintiff Rodriguez received a WARNING CITATION FOR PARKING IN THE STREET. *Attached hereto and incorporated herein by reference as Exhibit K.*

31. Plaintiff Rodriguez made a public information request from the City of Del Rio on procedures on how to get signs put on streets. Upon receiving the information, he requested via public information for the following: (copies of the request for signs from the school, approval for work project, man hours worked, equipment used, materials used and notice to city secretary of new postings of signs to be recorded by the city secretary.) The City of Del Rio official response was "NO INFORMATION IS RESPONSIVE TO YOUR REQUEST".

32. Plaintiff Rodriguez months later was at a local restaurant name "822" located at 822 South Main Street, Del Rio, Texas. Plaintiff Rodriguez offered to move one seat over so a couple could sit. The couple's last name was Ricks; and Mrs. Ricks is the principal of Sacred Heart Academy, and she stated to me, "I never asked for no parking signs but thanks to you we got them".

33. Plaintiff Rodriguez spoke via telephone with the public works director after placement of the signs and he stated that he can place signs out as he pleased and does not need a request and that no one instructed, directed or ordered him to place the signs. He just did it out of the blue.

34. Defendant City of Del Rio has a policy or custom of failing to properly train and supervise its police officers regarding use of force and lawful arrests, which was the moving force behind the violation of Plaintiff's rights.

## CLAIMS FOR RELIEF

### Count I – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (First Amendment – Retaliation for Protected Conduct)

35. The CITY OF DEL RIO POLICE DEPARTMENT HAS A PATTERN OF PRACTICE OF RETALIATION AGAINST PLAINTIFF ARTURO RODRIGUEZ. On, May 2015, Mr. Rodriguez filed complaints on two police supervisors, a Captain Apolonio Hernandez and a Sergeant Wesley Wilson.

36. Letter from Del Rio Police Department and the lawsuit's copy of PLANTIFFS ORIGINAL COMPLAINT is included with this filing. *Attached hereto and incorporated herein by reference as Exhibit E.*

37. In retaliation for Mr. Rodriguez filing a complaint as he is legally permitted to do so according to the First Amendment of the United States Constitution, freedom of speech and right to redness grievances.

38. Captain Hernandez, with willful, malicious and intentional motive to harm Mr. Rodriguez employment wrote a letter to Rodriguez employer, the Department of Homeland Security Customs and Border Protection. *Attached hereto and incorporated herein by reference as Exhibit F.*

39. The letter from Del Rio Police Captain from 2015 resulted in the Department of Homeland Security Customs and Border Protection taking

the gun and badge away from Plaintiff Rodriguez. The agency due to the letter was fearful of Rodriguez ability to perform his duties. As the process to remove Rodriguez from service proceeded, the Del Rio Police Department retracted its issuance of the letter. Del Rio administration called for a meeting with Rodriguez; present were City Attorney Suzanne West, City Manager Henry Arredondo, Captain Fred Knoll and now deceased Chief Wayland Bullard. The reason for the meeting was for the Chief to apologize to Rodriguez and to inform him that if he called for service 100 times a day, there would be a police officer present 100 times and that if Rodriguez had any problems to call him and have his phone numbers. Rodriguez asked for the statement in writing and was told that the city could not do that and that they would notify the agency, Customs and Border Protection. Rodriguez managed to retire from the agency but still was hurt because he had a minimum of 15 years in his career; a sum estimated by the past law firm calculated loss of salary at over 1.8 million dollars.

40. Rodriguez was able to find a law firm to defend and get justice for the wrongdoing.

41. The law firm was derelict and inexperienced and filed the case in State Court under "Libel", and NOT under 42 USC 1983. The law firm missed the States statute of limitations. Case was dismissed.

42. The Del Rio Police Department Internal Affairs investigation found no wrongdoing by Captain Hernandez.

43. The Internal Affairs investigation on Captain Hernandez was conducted by Captain Manny Herrera. Herrera and Hernandez have both been employed with the same department for over 20 years and had and continued to be next door neighbors for the past 25 years.

44. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

45. Plaintiff asserts this claim against Defendants Roman and Ramirez.

46. At all times relevant, Defendant Roman and Ramirez were acting under color of law.

47. Plaintiff has a clearly established right under the First Amendment to photograph and record police activity. See *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017),("We conclude that First Amendment principals, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions.')

48. It is clearly established that it is a First Amendment violation if an officer retaliates against someone in response to protected speech. *Mesa v. Prejean*, 543 F.3rd 264, 273 (5th Cir. 2008) (citing Lewis v. City of New Orleans, 415 U.S. 130, 134-35, (1974) (Powell, J. concurring), (Trained officers must exercise restraint when confronted with a citizen's anger over police action."); *Keenan v. Tejeda* 290 F. 3rd 252, 258 (5th Cir. 2002), ("The First Amendment prohibits...adverse governmental action against an individual in retaliation for the exercise of protected speech activities."); see *City of Hous. V. Hill*, 482 U.S. 451, 462 (1987), ("[The]

First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

49. Defendant Roman retaliated against Plaintiff when he attacked Plaintiff in response to him filming them and then verbally criticizing them.

50. In retaliation for engaging in protected conduct, first amendment right to redress government. Defendant Roman targeted Plaintiff subjecting him to unlawful and unnecessary excessive force, and without any lawful or other legitimate basis.

51. Defendants' conduct was done in retaliation for Plaintiff's participation in constitutionally protected activity.

52. At all relevant times, Defendant Roman was required to obey the laws of the Unted States.

53. Defendant Roman's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

54. As a direct and proximate result of Defendant Roman's unlawful actions, Plaintiff was harmed.

## Count II – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 Fourth Amendment (Excessive Force under 42 U.S.C. § 1983)

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

56.    It is clearly established that Plaintiff has the right under the Fourth Amendment to be free from excessive force during such a seizure. *Pool v. City of Shreveport*, 691 F. 3rd 624, 627 (5th Cir. 2012), (citation omitted).

57.    Defendant Roman, acting under color of law, used unnecessary and excessive force against Plaintiff by stopping him from photographing or recording police activity and then grabbing, assaulting him before shoving him into the police department lobby.

58.    Defendant Roman while acting within the scope of his employment with the City of Del Rio Police Department, knew that they he was without lawful authority to grab and assault Plaintiff as he was not violating any law or committing any crime.

59.    Defendant Roman embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause – and in fact caused Plaintiff to suffer.

60.    Plaintiff sustained left shoulder injuries because of Defendants' conduct. Plaintiff is still seeking treatment for his injuries.

61.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, embarrassment, and loss of reputation.

### Count III – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 Fourteenth Amendment (Failure to Provide Medical Care)

62.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

63. Plaintiff asserts this claim against Defendant Roman.

64. Plaintiff has a clearly established right not to have his medical needs met with deliberate indifference. A state actor violates the constitutional rights of a person by acting with deliberate indifference to a person's medical needs. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020), cert. denied, 141 S. ct. 1379 (2021).

65. At all times relevant herein, Defendant was acting under the color of law.

66. The Fourteenth Amendment to the United States Constitution requires state officials to provide medical care to individuals injured.

67. Defendant Roman knew that Plaintiff was grabbed and shoved which resulted in shoulder injuries that required medical attention.

68. Defendant Roman knowingly failed to provide or get immediate, necessary medical care for Plaintiff's medical needs, in deliberate indifference to the risk of serious harm to Plaintiff.

69. After a delay, a police clerk called an ambulance and took Plaintiff to the hospital.

70. The failure to provide immediate medical injuries contributed to the severity of the injuries. Plaintiff sustained injury to his left shoulder.

71. Plaintiff suffered injuries because of Defendant Roman's excessive and unnecessary use of force. Plaintiff's resulting harm was a direct consequence of Defendants' failure to provide Plaintiff with immediate necessary medical care.

## Count VI – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## Fourteenth Amendment (Failure to Intervene)

72. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior allegations.

73. At all times relevant herein, Defendant was acting under the color of law.

74. Defendant John Doe observed Defendant Roman engaged in unlawful conduct and violated Plaintiff's constitutional rights. Rather than intervene or prevent the harm from occurring, in joined Defendant Roman in assaulting Plaintiff.

75. Defendant John Doe observed Defendant Roman unlawfully assault Plaintiff. Defendant John Doe knew Plaintiff did not commit any crime but did not prevent Defendant Roman from violating Plaintiff's constitutional rights or intervening to stop the violations.

76. Defendants had the opportunity and the means to prevent harm from occurring.

77. Defendants either joined in committing violations or stood by and let the harm unfold.

78. Defendant Roman and John Doe had ample opportunity and time to intervene.

79. At all times relevant, Plaintiff had a clearly established right to be free from state actors' failure to intervene.

80. At all times relevant, Defendants Roman and John Doe intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently allowed their fellow officers to use unnecessary and excessive

force against Plaintiff and otherwise violate Plaintiff's constitutional and statutory rights.

81.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered damages for his physical, mental, and emotional injury, and for pain, mental anguish, humiliation, and embarrassment.

## Count V – Municipal Liability
## FAILURE TO TRAIN OR SUPERVISE (Monell Claim against City of Del Rio)

82.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

83.    Officers Roman, Ramirez and John Doe were, at all times relevant, City of Del Rio police officers.

**A.    *The City of Del Rio is liable for Defendants' Excessive Force / Unnecessary use of Force.***

84.    The City of Del Rio is liable to Plaintiff since the City and its Policymakers promulgated or adopted a policy that was the "moving force" that caused one or more of its employees to violate Plaintiff Rodriguez's constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L Ed. 2d 611 (1978)

85.    Defendant Ramirez was, at all times relevant, a city of Del Rio police officer and supervisor of Defendants Roman and John Doe.

86.    Defendant City failed to train or supervise Defendants Officers on de-escalation procedures.

87.    Defendant City failed to train or supervise Defendant Officers on rendering medical aid.

88.    Defendant City failed to train or supervise Defendant Officers on intervening when police officers clearly violate a citizen's constitutional rights.

89.    Defendant City has a policy of hiring patrol officers with a principal responsibility of "Investigat[ing] suspicious conditions and complaints and make arrest of persons who violate laws and ordinances." Whether a person violated a law or ordinance was within Defendants Roman and John Doe's discretion "and interpretation of these laws" Pursuant to this policy, Defendants Roman and John Doe were not properly trained or supervised on what the law was concerning a citizen's right to film police activity. The duty description omits any community caretaking function or requirement.

90.    Accordingly, Defendants Roman and John Doe lacked training to determine whether Plaintiff was breaking the law.

91.    Defendant John Doe was on the scene and did nothing to prevent the constitutional violations and failed to stop Defendant Roman.

92.    Defendant City is liable under 42 U.S.C. § 1983 if the supervisor failed to train or supervise the officers involved, there is a casual connection between the alleged failure to supervise or train and the alleged violation, and the failure to train or supervise constituted deliberate indifference.

93.    Had Defendants Roman and John Doe been properly trained in a citizen's rights to photograph and film police activity and how to interact with

citizens engaging in protected activity such as photographing and filming police activity, Defendants Roman and John Doe would have never had any reason to assault Plaintiff.

94. Defendant City's training was so inadequate or nonexistent that it should have been predicted that an untrained officer would have acted in the way that Defendant Roman and John Doe did.

95. Not a single officer immediately questioned Defendant Roman's conduct. None of these officers questioned whether Plaintiff's rights were violated or whether he even committed a crime.

96. Defendant City's police officers were clearly untrained in recognizing and protecting a citizen's constitutional rights to photograph or film police activity.

97. The failure of Defendant John Doe and Defendant City to train or supervise Defendants Roman and Ramirez demonstrates deliberate indifference to the constitutional rights of the Plaintiff.

98. Defendant City is directly responsible for the individual Defendants' conduct described herein.

## DAMAGES

Plaintiff seeks the following relief:

- Compensatory damages for physical pain, emotional distress, medical expenses, and lost wages.

- Nominal Damages for retaliation by Defendants for Plaintiff's exercise of his First Amendment rights, as the Court finds appropriate, from one or more Defendants.

- Punitive damages from one or more Defendants for willful and reckless misconduct.

- Reasonable costs and litigation expenses.

- Any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants, award damages as set forth above and grant such other relief as the Court deems just and proper.

Respectfully submitted,

Arturo Rodriguez
Pro Se Plaintiff
205 Foster Drive
Del Rio, Texas 78840
830-488-1666
artrod67@msn.com

## VERIFICATION (28 U.S.C. § 1746 Declaration)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ 9/25/25 _____ .

Arturo Rodriguez
Pro Se Plaintiff