FILED

FEB 23 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

**ARTURO RODRIGUEZ**
 *Plaintiff*

**Vs.**                                                    **No. 2:25 CV -00074-EG-JAC.**

**CITY OF DELRIO**
**RICK ROMAN, CAPTAIN**
**JOHN DOE, POLICE OFFICER**
**FRANK RAMIREZ, CHIEF**
 *Defendants.*

---

### PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS, AND PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION TO DISMISS

---

TO THE HONORABLE COURT:

Plaintiff ARTURO RODRIGUEZ files this *Plaintiffs Motion to Strike and Plantiffs Response to Defendants Motion to Dismiss* to thoroughly respond and address each point raised in *Defendants Motion to Dismiss* filed by Defendants **CITY OF DEL RIO, JOHN DOE, RICK ROMAN** and **FRANK RAMIREZ** (collectively, "Defendants) under Rule 12(b (6) of the Federal Rules of Civil Procedure.

### I.        STATEMENT OF ISSUES PRESENTED

1. Whether Defendants Motion to Dismiss should be struck, in its entirety or in part for failing to follow local rules and for attempting to present conclusory statements rather than assert that Plaintiffs pleadings are not sufficient.

   Whether Plaintiff alleged sufficient fact to state a claim against a Defendant Supervisor,

✓ EG

And Coworker for failing to provide medical car (Count IV), for failing to intervene (Count V) and

Supervisory liability (Count VI) where Defendant John Doe observed his coworker use unnecessary use of force and unlawfully assault a law-abiding citizen and did nothing about it.

## II.    STATEMENT OF LEGAL AUTHORITIES PRESENTED

Defendants are not entitled to dismissal because the "pleadings on their face show an unreasonable violation of clearly established constitutional right, and therefore the defense of qualified immunity will not sustain motion to dismiss under Rule 12 (b) (6)." *Shipp v. McMahon* , 234 F. 3.d 907, 912 (5th Cir. 2000) *overruled in part on other grounds by McClendon v. City of Columbia,* 305 F. 3d 314, 329 (5th Cir. 2002)

The Sufficiency of Plaintiffs pleadings is governed by FED. R. CIV P. 8(a) (2) and FED. R. CIV. P. 12 (b) (6).

Authority for making a Section 1983 claim for failure to intervene when "an officer js present at the scene does not take reasonable measure to protect a can be found in *Hale v. Townley*, 45 F.3d 914, 919 (5 Cir. 1995).

Authority for making a Section 1983 claim for failure to provide medical care is found at *Kelson v. Clark*, 1 F.4th 411, 418 (U.S. 5th Cir. 2021) (citing *Hare v. City of Corinth*, 74 F. 3d 633, 645 (5th Cir. 1996), *Thompson v. Upshur Cty.*, 245 F. 3d 447, 457 (5th Cir. 2001), and *Dyer v. Houston*, 964 f. 3d, 374, 380 (5th Cir. 2010).

Authority for making a Section 1983 claim for supervisory liability can be found in *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F3d 404, 434 (5th Cir. 2008)

Authority for a Section 1983 claim against a municipality for its failure to train its officer can be found in World Wide St. Preachers Fellowship v. Town of Columbia, 591, F.3d 747, 756 (5th Cir. 2009).

### III.                          MOTION TO STRIKE

#### A. Defendants Improperly Assert Their Own Coclusory Fact in Attempt to Prevail on a 12 (b) (6) Motion to Dismiss

Defendants assert that Officer John Doe Failure to Intervene be Dismissed when video footage clearly identifies one male subject standing in the hallway and assisting in holding door open.  Defendant John Doe failed to intervene when seeing Captain Roman placed his hands on Plaintiff and pushing him out into the lobby.  Such physical contact in violation of Texas Penal Code (22.01) (a) (3) Assault, when Plaintiff clearly was not violating any law and did not require any assistance in walking, moving at any time then and now.  These conclusory statements are without evidence and improper assertions that are inconsistent with Plaintiffs pleadings. Therefore paragraph 14 of Defendants Motion to Dismiss should be struck or in the alternative, not considered by this Court for purposed of evaluating whether Defendant can succeed under Rule 12 (b) (6).

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the Plaintiff". *Vanderbrook v. Unitrin Preferred Ins.Co.* (*In re Katrina canal breaches Litig.*), 495 F3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit,* 396 F. 3d 464, 467 (5th Cir. 2004) (internal quotation marks omitted)

Plaintiff clearly asserted that Defendant John Doe observed Defendant Roman unlawfully grab, push Plaintiff out of the office, into the hallway and out to the lobby. Plaintiff explicitly plead that Defendant Doe had ample time and opportunity to intervene. Plaintiff also sufficiently stated that Defendant Doe was present in the hallway outside the office and did nothing to prevent the constitutional violations.

## IV.    RESPONSE TO DEFENDANTS MOTION TO DISMISS

### A.   Standard of Review

All that is required und the Federal Rules of Civil Procedure is for the Plaintiff to pleas "a short and plain statement of the claim showing that [he is] entitled to relief". FED. R.Civ. P. 8 (a) (2). The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specific facts are not necessary." *Inhale, Inc. v. Gravitron*, LLC 2018 U.S. Dist. LEXIS 223241, at *3 (W.D. Tex. Dec 10, 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

In Deciding a motion under Rule 12 (b (6), the Court views the pleadings in a light most favorable to the Plaintiff and assumes that all facts in the Plaintiffs complaint are true. *Club Retro, L.L.C., v. Hilton*, 568 F. 3d 181, 194 (5th Cir. 2009). Finally, motions to dismiss under Rule 12 (b) (6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc* 565F.228, 231 (5th Cir. 2009).

### B.   Defendants are Not Entitled to Qualified Immunity Because his Conduct as Alleged Violated Plaintiffs Clearly Established Rights.

Qualified immunity "is an affirmative defense which must be established by the defendant." *Teladoc, Inc. v. Tex. Med. Bd.*, 2015 U.S. Dist. LEXIS 166754, AT *18-19 (W,D. TEX. DEC 14, 2015)

(collecting cases). Defendants simply assert (in a conclusory fashion) that since Frank Ramirez was not on the scene at the time Rodriguez was assaulted but John Doe was, it is unclear what clearly established constitutional right was violated by Frank Ramirez". Importantly, Defendants position fails simply because plaintiff alleged that John Doe was on the scene at the time of Plaintiffs assault. For this reason, Defendants failed to establish qualified immunity.

"A public official is entitled to qualified immunity unless a plaintiff can show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established at the time of the challenged conduct." *Gerhart v. McLendon*, 714 F. Appx. 327, 333 (5th Cir. 2017) (citing *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011).

### 1. *Constitutional Violation-Failure to Provide Medical Care (Count III)*

After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestees' right to medical attention lie that of a retrial detained derives from the Fourteenth Amendment." *Nerren v. Livinston Police Dep't*, 86 F. 3d 469, 473 (5th Cir. 1996)

Defendants dispute Plaintiff was not assaulted in any way and he is making up story. Video footage and still photos show otherwise. The law was clearly established that detainees have a Fourteenth Amendment right to medical care. *Keson* 1 F. 4th at 421 (citing Hare, 74 F. .3d at 645; *Thompson,* 245 F.3dat 457; Dyer, 964 F. 3d at 380; and *Jacobs v. w. Feliciana Sheriffs Dep't*, 228 F. 3d 388 393-94 (5th Cir. 2000)."

Here, Plaintiff Complaint sufficiently states a claim against Defendant Roman, John Doe for refusing to provide medical care. Plaintiff alleges that he sustained injury that required medical care. Defendant Roman and John Doe hid and refused to tend to Plaintiff after assault. Plaintiff exited the Police Department and returned because he knew he had been assaulted and his right shoulder was in pain, pain that did not exist until he was grabbed and shoved by Defendant Roman. Not one officer responded to the lobby. Plaintiff was observed by an unidentified male clerk and asked Plaintiff if he needed medical assistance. Plaintiff responded in the affirmative. Defendants claims Plaintiff had office door blocked with his foot, totally false and unfounded, Defendant further states that Plaintiff claims he was knocked to the floor and injured his shoulder and that he received an MRI at the hospital. Both allegations are not true and not stated by Plaintiff original complaint. Plaintiff never fell and he was advised to get an MRI, which he did at a later date and results showed a torn rotator cuff and subsequently resulted in surgery. Defendants knew Plaintiff had suffered injury due to Ambulance and medical personnel arriving and were present in Police Departments Lobby for approximately 20 minutes.

Critically, Defendants do not dispute could demonstrate a violation of his constitutional rights by showing that Defendants "refused to treat him, ignores his complaints, intentionally or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" *Keklso* , 1G. 4th at 421 (internal citation omitted).

Plaintiff has sufficiently alleged a claim against Defendant Doe and Roman for deliberately failing to provide medical care.

2. _Constitutional Violation-Failure to Intervene (Count VI)_

Under the Fifth Circuits clearly -established bystander liability doctrine, "an officer who is present at the scene and does not take reasonable measures to protect a suspect form another officers use of force may be liable under section 1983." Hale, 45 F.3d at 919. "To prove bystander liability, the plaintiff must show the offer (1) knows that a fellow officer is violation an individual's constitutional rights; (2) has a reasonable oppurtunity to prevent the har; and (30 chooses not to act." _Mcdonald V. McClelland_, 779 F. app'x 222,226 (5th Cir. 2019) quoting _Whitley Vs. Hanna_, 726F.3d 631, 647 (5th Cir. 2013)

Here, Plaintiff properly alleges that Defendant John Doe observed another officer unlawfully assault Plaintiff even though Plaintiff was not committing any crime.

Plaintiff properly alleged that Doe was in fact present, knew another officer was violating Plaintiffs Constitutional rights, and despite having ample time and opportunity to do so, failed to intervene.

3. _Supervisor Liability, Ramirez (Count I)_

Defendants are correct that supervisors cannot be held vicariously liable under Section 1983 for the conduct of others. Estate of _Davis ex rel. v. City of n Richland Hills_, 406 F.3d 375, 381 (5thCir. 2005). However, a supervisor can be liable fo his own conduct that violated a plaintiffs constitutional rights

Defendants are correct that Plaintiff did not state "a claim fo conduct that Frank Ramirez actually committed that violated Plaintiffs clearly established constitutional right to be free to

redress government and from assault. However, what Defendants omit or do not discuss is the Plaintiff alleges that Ramirez engaged in other conduct.  Namely, Ramirez engaged in conduct violating Rodriguez' clearly established constitutional rights to be provided with his right to redress government, free from assault and officers requirement to intervene as the Head of the Police Department highest ranking member and stop gross constitutional violations of other officers from continuing.

Plaintiff has sufficiently alleged a liability claim against Defendant Doe and Ramirez for failing to provide medical care and lack of constitutional training.

### 4. *Qualified Immunity- Clearly established Law*

Defendant Roman is not entitled to qualified immunity for his conduct alleged because he violated Plaintiffs clearly established constitutional rights to be entitled to proper medical care, freedom to redress government, and that Roman would intervene and would prevent further harm form other officers' constitutional violations.  "In the context of a motion to dismiss, "if the pleadings on their face show an unreasonable violation ofa clearly established right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12 (b) (6)." *Morales v. Gomez*, No EP-14-CV-00189-DCG, 2014 U.S. Lexis 202305, at *9 (W.D.Tex. Nov. 7, 2014)" quoting *Shipp v. McMahon*, 234 F. 3d 907, 912 (5th Cir. 2000) overruled on other grounds by *McClendon v. City of Columbia*, 305 F . 3d 314, 329 (5th Cir. 2002).  As discussed herein, Plaintiff alleged sufficient facts to support his claims against Rick Roman, so Rick Roman is not entitled to dismissal.  Defendant is no longer employed with the Del Rio Police Department due to alleged allegations of Sexual Harassment against a Female City Employee n

which was employed by the Police Department as a communications officer and is now the Emergency Management Coordinator.   Roman was escorted off the Departments property and was instructed to turn in his gun, badge, credentials, keys and car, additionally he was ordered not to report to the building and he must report daily at different times of the day.   It is not known if he was terminated or allowed to resign pending *Official Oppression Charges.*

"In order for a right to be 'clearly established,' the relevant legal authorities must give the officer 'fair warning' that his or her conduct was unlawful." *Gerhart v. McLendon,* 714 Fed. Appx. 327, 333 (5th Cir. 2017) (citing Hope v. Pelzer, 536 U.S. 730, 739-41 (2002)). "Although the right cannot be defined too abstractly, the Supreme Court has rejected any requirement that the facts of prior cases be 'fundamentally' or 'materially' similar." Id. "Thus, officials can still be on notice that their conduct violates established law even in novel factual circumstances. The key question is not whether there is a case directly on point, but whether a reasonable officer would understand that his or her conduct was unlawful." Id. (citing *Kinney v. Weaver,* 367 F.3d 337, 349-50 (5th Cir. 2004) (internal citation omitted).

The court "need not immunize an officer from suit for an obvious violation simply because no case has held that the officer's precise conduct was unlawful."

Where there is an absence of controlling authority, "a consensus of cases of persuasive authority" can be "sufficient to compel the conclusion that no reasonable officer could have believed that his or her actions were unlawful. Case law need not be directly on point, though it should be close, and if the conduct is particularly outrageous, the caselaw putting the officer on notice can be more general in character." *Graves v. Zachary*, 277 Fed. Appx. 344, 348 n.4 (5th Cir. 2008) (citing *McClendon v. City of Columbia*, 305 F.3d 214, 329 (5th Cir. 2002) and *Pierce v. Smith,* 117 F.3d 866, 882 (5th Cir. 1997) ("We recognize that in order to preclude qualified immunity it is not necessary that the very action in question has previously been held unlawful, or that the plaintiff point to a previous case that differs only trivially from his case. However, the facts of the previous case do need to be materially similar. We also recognize that the egregiousness and outrageousness of certain conduct may suffice to obviously locate it within the area proscribed by a more general constitutional rule . . . .").

As described above, Defendant Roman is alleged to have committed constitutional violations that were clearly established.

## C. <u>Plaintiff Properly Asserted a Failure to Train Monell Claim Against</u>

   <u>Defendant City</u>

"A municipality's failure to train its police officers can without question give rise to § 1983 liability." World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 756 (5th Cir. 2009). Such "failure to train" claims can prevail where plaintiff establishes that: "(1) the [official] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or

Case 3:22-cv-00114 Document 9 Filed on 06/13/22 in TXSD Page 11 of 21

train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

### 1. *Failure to Train*

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. City of Canton v. Harris, 489 U.S. 378, 391 (1989). Here—even if the Court were to defer to Defendants' conclusory allegations—Defendants Roman and John Doe

were present to hear a citizen complaint.

The most basic function of public service requires that officers be aware of the constitutional rights the "citizens." Without such knowledge, no officer could be expected to manage such a citizen without potentially violating some their rights, which is exactly what happened to Plaintiff. It is uncontested that officer Cagle was clearly unaware of plaintiff's free speech rights.

Officer Romans knowledge of the applicable law was also clearly inadequate as he did nothing to correct.

Further, several other officers from Defendant City's police department were on the scene, but none of them did anything to stop the continued violations. See

Officer Doe, on the scene, continued to witness Plaintiff in grabbed and pushed which resulted in him being forced into the hallway causing injury to this left shoulder.  Plaintiff called 911 from the hospital to have a police report and was advised that one was on the way.   Three hours in the emergency room and no police ever showed up.

call came through directing plaintiff to be removed from his handcuffs.

. This is clear evidence that Defendant City failed to train its officers or supervisors on what their citizens' rights to free speech were.

2. *Casual Connection*

The casual connection between the failure to train and the violation of Plaintiff's rights is clear and absolute. Had any of the officers on the scene been properly trained as to a citizen's First Amendment rights for filming or recording then they never would have engaged Plaintiff in the first place and no unlawful detention, arrest, and assault would have occurred.

Under some circumstances, "predicting how a hypothetically well-trained officer would have acted may not be an easy task for the fact finder." *Canton*, 489 U.S. at 391. That is not the case in this situation. A factfinder would easily be able to infer, based on Plaintiff's sufficiently pled complaint, that a well-trained officer would have simply recognized that Plaintiff was engaging in a constitutionally protected activity and thus would have left him alone. There is realistically no plausible alternate cause for the injuries sustained to plaintiff except for Defendant City's failure to train its officers.

3. *Deliberate Indifference*

Deliberate indifference may be shown in two ways. *Littell v. Houston Indep Sch. Dist.,* 894 F.3d 616, 624 (5th Cir. 2018). Generally, a plaintiff shows deliberate indifference by demonstrating a pattern of similar violations arising from inadequate training. *Burge v. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). A pattern of similar violations helps to establish that "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *World Wide St. Preachers Fellowship*, 591 F.3d at 754.

Here, Plaintiff's rights were violated initially by officer Roman who physically demanded, not verbally that he cease engaging in a lawful activity of collecting news. Officer Doe then violated his rights by assisting officer Roman by opening the lobby/hallway door in plaintiff's unlawful assault by grab and shove. Officer Doe, then allowed Plaintiff' to fend for his own medical assistance. Several other police officers were at the scene, and none of them did anything to redress the violations

suffered by Plaintiff. Such indifference or incompetence

from Defendant City's several police officers certainly infers that the indifference to

Plaintiff's constitutional rights was a widespread, persistent practice of the City's

police force.

But even absent proof of pattern, deliberate indifference can still be inferred

if the factfinder determines that the risk of constitutional violations was or should

have been an "obvious" or "highly predictable consequence" of the alleged training

inadequacy. *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409

(1997) (construing *Canton*, 489 U.S. at 390 & n.10). That is, a single incident may

be sufficient to show deliberate indifference where the facts giving rise to the

violation are such that it should have been apparent to the policymaker that a

constitutional violation was the highly predictable consequence of a particular policy

or failure to train. *Burge v. St. Tammany Parish*, 3369 F.3d 363, 373 (5th Cir. 2003)

(citing *Brown v. Bryan County,* 219 F.3d 450, 461 (5th Cir. 2000)). The Supreme

Court in Canton gave a hypothetical for such a situation:

[C]ity policymakers know to a moral certainty that their police officers will

be required to arrest fleeing felons. The city has armed its officers with

firearms, in part to allow them to accomplish this task. Thus, the need to train

officers in the constitutional limitations on the use of deadly

force, see *Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be "so

obvious" that failure to do so could properly be characterized as "deliberate

indifference" to constitutional rights.

*Canton*, 489 U.S. at 390 n.10 (majority opinion). Under those circumstances, the

need for training is clear because without training, there would be no way for novice

officers to obtain the legal knowledge they require to carry out their clear and

recurring constitutional obligations. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d

616, 625 (5th Cir. 2018).

The Fifth Circuit outlined how a single incident can be sufficient to fasten

liability on a municipality in *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616 (5th

Cir. 2018). In *Littell*, a school police officer authorized several middle school girls

to be strip searched after $50 went missing in a choir class. *Littell*, 894 F.3d at 620.

Relying on *Canton*, the Fifth Circuit held that this one instance of a constitutional

violation was sufficient to plausibly allege deliberate indifference by the school. Id. at 629.

The allegations in *Littell,* like the allegations here, mirror Canton's hypothetical in all material respects. The Canton hypothetical discusses the constitutional duty not to use excessive force when conducting arrests, while *Littell* addresses the constitutional duty not to conduct unreasonable searches. Id. The *Canton* hypothetical makes clear that excessive force law is sufficiently clear to ground failure-to-train liability, and because the duties with respect to searches are arguably defined with greater specificity, then it too is sufficiently clear to ground failure to train liability. Id. at 626.

A citizen's right to gather news by way of recording is arguably even more clearly defined than either of the previous two examples. See *Turner v. Driver*, 848 F.3d 687, 688 (5th Cir. 2017) ("The First Amendment protects freedom of speech and freedom of the press. But the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw. [T]here is an

undoubted right to gather news from any source by means within the law." (internal

quotations omitted)).

Clearly, Plaintiff's First Amendment right is sufficiently clear to ground

failure-to-train liability as described in Canton.

Further, as in *Canton* and *Littell,* the constitutional duty not to interfere with

citizens' rights to record is likely to arise "in recurrent situations that a particular

employee is certain to face." *Littell*, 894 F.3d at 626. Given the fact that most

Americans own a phone capable of recording, it is almost impossible to think that a

police officer will not encounter a citizen who is exercising this First Amendment

right.

In 2017 the Fifth Circuit joined all other Circuits that have ruled on the issue,

in holding that the right to record police officers performing their duties in public

places is well within the protections of the First Amendment. *Turner*, 848 F.3d at

689.

This holding makes it clear that officers and police departments needed to be

trained and ready to recognize a citizen's rights that may be filming police officers

performing government functions —even if the officers find it irritating.

Here, Plaintiff was engaged in a clearly established constitutional right to photograph and film police performing their duties. This was a situation that Defendant City could have anticipated—that its officers would be filmed or photographed. Defendant City was required to provide this training to officers—especially those officers engaged in crowd control. However, that was not the case.

Neither Officers Roman and John Doe, was properly informed or trained on Plaintiff's right to film or record police activity. Had they been, Plaintiff would not have been detained, assaulted, or injured. In the least, Plaintiff would have been saved from further injury by Officer Roman had Officer Doe complied with his obligation to intervene.

Given the inevitability that their officers would be put in a situation where they were required to perform their functions while citizens recorded them, Defendant City knew that not training on these situations would almost surely lead to constitutional violations. Defendant City failing to provide this training is the

kind of deliberate indifference which creates municipal liability for Section 1983

failure-to-train claims.

Defendants contend "That a particular officer may be unsatisfactorily trained

will not alone suffice to fasten liability on a municipality, for the officer's

shortcomings may result from factors other than a faulty training program."

(citing *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)). This is neither an

accurate statement of the law nor is it directly applicable to the facts of the case at

bar.

As noted above, the Supreme Court and Fifth Circuit have outlined several

scenarios in which one officer's conduct is sufficient to fasten liability on a

municipality. See *City of Canton v. Harris*, 489 U.S. 378 (1989) (decided four years

after *Oklahoma City v. Tuttle*); Brown v. Bryan County, 219 F. 3d 450 (5th Cir.

2000); *Littell v. Houston Indep. Sch. Dist.,* 894 F.3d 616 (5th Cir. 2018).

The *Oklahoma City v. Tuttle* case concerned a single incident by a single

nonpolicymaking officer. Tuttle, 471 U.S. at 824. Plaintiff's allegations are of a

different nature as this concerned several officers. Neither Officers Roman nor

John Doe were aware of Plaintiff's constitutional right to record from a his phone. Several calls

and emails to internal affairs investigator Dulce Gonzalez and Chief Ramirez and the City of Del

Rio administration consisting of City Manager and City council staff were contacted by Plaintiff

and none of them did anything to redress the violations that had already occurred.

Rather, each of the officers were complicate in allowing the violation to continue —

because of Defendant City's failure to train and deliberate indifference.

V. CONCLUSION

For the reasons stated herein, and where Defendants City of Del Rio, John Doe and Frank

Ramirez have only moved to dismiss Count I, V and VI, Plaintiffs respectfully requests this

Honorable Court deny Defendant

Officers' motion to dismiss. In the alternative, if this Court finds any pleading-

related issues in Plaintiffs' complaint, Plaintiffs respectfully request this Court grant

an opportunity to amend. Plaintiff further requests that this Court strike Defendants'

Motion to Dismiss in its entirety, or in part, as put forth above, or in the alternative,

that the Court disregard the conclusory statements made by Defendants in their

motion. Plaintiff requests all other relief to which he may be entitled in law or equity.

Respectfully submitted,

ARTURO RODRIGUEZ/PRO SE

205 FOSTER DRIVE

DEL RIO, TEXAS 78840

830-488-1666

## CERTIFICATE OF SERVICE

I hereby affirm that on this 23th day of FEBRUARY 2026, the foregoing document

was filed with the Court's in person and that a copy of said

document was served upon all parties of record, via electronic service. Clarissa M. Rodriguez at

cmrodriguez@rampagelaw.com pbernal@rampagelaw.com pbernal@rampagelaw.com

Arturo Rodriguez

Exhibit A

Texas Penal code on assault


Exhibit B

Photo of grab by Captain Rick Roman


Exhibit C

Photo of push by Captain Rick Roman

# Exhibit A

# Texas penal code

# Sec. 22.01. ASSAULT

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

 Outlook

**Exhibit B**

## Grab

From ARTURO RODRIGUEZ <artrod67@msn.com>

Date Mon 2/23/2026 4:03 PM

To    ARTURO RODRIGUEZ <artrod67@msn.com>



Sent from my iPhone

 Outlook

Exhibit C

---

**(No subject)**

---

From   ARTURO RODRIGUEZ <artrod67@msn.com>

Date   Mon 2/23/2026 3:50 PM

To     ARTURO RODRIGUEZ <artrod67@msn.com>



Sent from my iPhone