**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

FILED
SEP 23 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY CLERK

| | | |
|---|---|---|
| **ARTURO RODRIGUEZ,**<br>*Plaintiff,* | § | |
| **v.** | § | **Civil Action No.**<br>**2:25-CV-0074-EG-JAC** |
| **CITY of DEL RIO, RICK ROMAN, JOHN DOE, and FRANK RAMIREZ,**<br>*Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Report and Recommendation of the Honorable United States Magistrate Judge Joseph A. Cordova (the "R&R"), ECF 44, filed on August 5, 2026. Judge Cordova, having converted Motions to Dismiss filed by the Defendants, ECF 26 and 28, into Motions for Summary Judgment (collectively the "Motions"), recommends that the Court grant the Motions. Plaintiff timely filed an objection to the R&R, ECF 46. Having conducted a de novo review of the R&R, the record, and the applicable law, the Court finds that the R&R should be **ADOPTED** and the Motions **GRANTED.**

## I. BACKGROUND

Plaintiff Arturo Rodriguez's claims arise from an incident that took place at the Del Rio Police Department ("DRPD") on October 2, 2023. (ECF No. 1). Plaintiff has alleged that DRPD Captain Rick Roman, DRPD Chief Frank Ramirez, and an unidentified John Doe DRPD officer were all either active or complicit in an incident where they deprived Plaintiff of his constitutional rights, which resulted in injury to the Plaintiff's shoulder. (ECF No. 1). Plaintiff now asserts claims against all the aforementioned DRPD Officers for violations of his First, Fourth, and Fourteenth Amendment rights under section one of the Civil Rights Act: 42 U.S.C. §1983; and against the City of Del Rio for inadequate training and maladministration of its police force. The Defendants move to dismiss Plaintiff's Original Complaint, arguing that Plaintiff failed to state a claim upon

which relief could be granted, under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), and that the individual Defendants are all subject to Qualified Immunity. (ECF Nos. 26 & 28). Plaintiff moved to strike and issued a Response to Defendant's Motion to Dismiss. (ECF No. 33). Because the Defendants submitted video evidence, the magistrate court could no longer rely solely on the complaint. (ECF No. 28). Consequently, on May 1, 2026, the court converted the motions to dismiss into motions for summary judgment to properly evaluate the evidence. (ECF No. 35).

On August 5, 2026, Judge Cordova issued an R&R, recommending that the Court grant the Defendant's Motion for Summary Judgment. (ECF No. 44). Plaintiff timely objected to the R&R. (ECF No. 46).

## II. LEGAL STANDARDS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(3), the Court has conducted a de novo review of those portions of the Magistrate Judge's R&R, ECF 44, to which Plaintiff specifically objected[1], and has reviewed the remaining, unobjected-to portions to determine if they are "clearly erroneous or contrary to law." *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

Where the summary judgment record includes video evidence, the Court need not accept a non-movant's account where that account is discredited by the footage; the facts are instead viewed "in the light depicted by the videotape." *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)); *Carnaby v. City of Houston*,

[1] Plaintiff's Objections, ECF 46, include language characterizing the Magistrate Judge's findings as biased, corrupt, or reflective of a justice system favoring the wealthy. *See e.g.*, ECF 46 at 2–3. Judicial officers and their reasoned opinions are entitled to the same standard of professional respect this Court expects in every filing, regardless of a party's *pro se* status. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Court disregards the accusatory characterizations as unsupported by the record and immaterial to the analysis and confines its review to properly presented factual and legal objections.

636 F.3d 183, 187 (5th Cir. 2011) (affirming summary judgment where video footage discredited plaintiff's version of an arrest).

**B. Summary Judgment Standard**

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, the non-movant must go beyond the pleadings and set forth the specific facts showing a genuine issue for trial. *Id.* at 324. In deciding the motion, courts view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

**C. Qualified Immunity**

Qualified immunity shields government officials from liability unless (1) the official's conduct violated a statutory or constitutional right, and (2) that right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A defendant's genuine claim of qualified immunity shifts the burden to the plaintiff to disprove it. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–34 (5th Cir. 2000). Plaintiff carries that burden only by pointing to specific, competent summary judgment evidence rather than conclusory allegations, speculation, or unsubstantiated assertions. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). A right is "clearly established" only where existing precedent has placed the specific constitutional question "beyond debate," rather than framed at a high level of generality. *Morrow v. Meachum*, 917 F.3d 870, 874–76 (5th Cir. 2019).

### D. First Amendment Retaliation and the Right to Record

A valid claim for First Amendment retaliation must show that a plaintiff engaged in constitutionally protected activity, suffered an adverse action substantial enough to deter or discourage an average, reasonable person, and that the protected activity substantially motivated the adverse action. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The Fifth Circuit has recognized a right to record police in public, subject to reasonable time, place, and manner restrictions. *Turner v. Driver*, 848 F.3d 678, 688–90 (5th Cir. 2017). However, this right still has boundaries, especially in nonpublic settings, which controlling authority has not clearly defined. *Id.* Places, such as the interior of a secured police facility, have video restrictions because the government retains a legitimate interest in securing areas where sensitive investigations, personnel matters, or confidential information may be discussed.

### E. Fourth Amendment Excessive Force

A successful excessive force claim requires proof that a plaintiff's injury resulted directly and exclusively from force that was clearly in excess of what was needed and was objectively unreasonable. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Reasonableness is judged from the perspective of a rational officer on the scene, without the benefit of hindsight, considering the totality of the circumstances. *Barnes v. Felix*, 605 U.S. 73, 80–81 (2025). Consistent with that framework, the Fifth Circuit has recognized that a plaintiff's injury requirement operates on a sliding scale in accordance with the degree of force used; brief physical contact incidental to escorting or directing a non-compliant individual does not establish a constitutional violation on its own. *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022); *see also Carnaby*, 636 F.3d at 187 (officer's brief use of force in effecting compliance not clearly excessive).

### F. Denial of Medical Care

For a denial of medical care claim to succeed, the plaintiff must show that the official was subjectively aware of a serious medical need and consciously disregarded it. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). This standard applies where the plaintiff was in the defendant's custody at the time of the alleged deliberate indifference. It is important to note that the constitutional duty to provide medical care *does not* extend to individuals who were never seized, arrested, or otherwise placed in custody. *Id.* (emphasis added). Deliberate indifference is an extremely high standard that requires more than negligence or even gross negligence; an official must know facts showing a high risk of serious harm or a violation of rights and actually reach that conclusion. *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381–82 (5th Cir. 2005).

### G. Failure to Intervene

A law enforcement officer who is present at the scene of a constitutional violation and fails to take reasonable measures to prevent it may be held liable under 42 U.S.C. §1983 as a bystander. To establish bystander liability, a plaintiff must show that the officer (1) knew a fellow officer was violating an individual's constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Where the underlying use of force was not unconstitutionally excessive, or where the summary judgment record establishes that the officer had no realistic opportunity to intervene given the brevity of the encounter, bystander liability is not applicable. *Miller v. Dricks*, 840 F. App'x 799, 801 (5th Cir. 2021) (unpublished) (affirming summary judgment for bystander officer where video established no reasonable opportunity to prevent the alleged harm).

### H. Supervisory Liability

Supervisory officials are not liable under 42 U.S.C. §1983 for their subordinates' actions under a theory of vicarious liability or *respondeat superior*. *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). To prevail in a supervisory liability claim, a plaintiff must show that the supervisor either personally participated in the constitutional violation or that a sufficient causal connection exists between the supervisor's own wrongful conduct and the constitutional violation committed by a subordinate. *Rios v. City of Del Rio*, 444 F.3d 417, 427 (5th Cir. 2006). This requires demonstrating that the supervisor knowingly acted or neglected to act with deliberate indifference to a subordinate's violation of the plaintiff's constitutional rights, and that the outcome was directly connected to the constitutional violation. *Gates v. Tex. Dep't of Protective& Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Supervisory liability, similar to municipal liability, requires an underlying constitutional violation by the supervisor's subordinate. *Rios*, 444 F.3d at 425.

**I. Municipal Liability (*Monell*)**

Municipal liability hinges on an official policy or custom, instituted by a policymaker, that (with deliberate indifference) directly causes a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A claim against the municipality cannot survive without an underlying constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013). Deliberate indifference usually involves a pattern of repeated, similar violations. The single-incident exception is limited and applies only if a predictable outcome of poor training would cause the specific violation in question. *Est. of Davis*, 406 F.3d at 383; *Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002).

## III. DISCUSSION AND ANALYSIS

Having set forth the legal standards above, the Court now applies those standards to the summary judgment record as to each Defendant, in turn, below. When the record leaves no genuine dispute of material fact, the corresponding claim is resolved as a matter of law.

**A. Defendant Roman**

1. First Amendment Retaliation

Defendant Roman is shielded by qualified immunity regarding the plaintiff's First Amendment retaliation claim. A claim of retaliation under the First Amendment requires that Plaintiff establish he was engaged in a constitutionally protected activity, that he suffered an injury serious enough to scare an average, reasonable person into stopping their protected actions, and that Roman's adverse reaction was substantially motivated by that protected activity. *Supra* Legal Standards Section D.

The record establishes that the area in which the encounter occurred is a restricted, controlled area of the police department, marked by a posted sign stating, "Restricted/Controlled Area – Entrance Requires Escort by Authorized Personnel." (ECF No. 38-1 at 15). The Fifth Circuit has recognized a right to record police in public, subject to reasonable time, place, and manner restrictions, but has not definitely established that this right extends to the interior of a nonpublic, restricted area of a police facility. *Turner*, 848 F.3d at 690.

Regardless of that preliminary issue, the record does not support the claim that Roman's actions were substantially motivated by Plaintiff's attempt to record. The video evidence reflects that the Plaintiff had entered Roman's office, the two began a discussion, that discussion quickly devolved to the point where Plaintiff states to Roman, "You're worthless, dude. Your agency is worthless. That's why I have no respect for you." (ECF No. 28-1, Ex. A6) At this point the conversation had reached a point that was no longer productive and Roman chose to end the

meeting by standing up to leave the office and turning off the office light. *Id.* Visibly irritated that Roman was taking charge to end the conversation, Plaintiff then announced his intent to record. *Id.* This is when Roman reaches for Plaintiff's arm, Plaintiff pulls his arm away, and Roman then steps behind Plaintiff placing his hand on his back to guide him out of the restricted area. *Id.* Roman's subsequent conduct (guiding Plaintiff toward the exit) followed directly from Plaintiff's refusal to leave the restricted area, not from the act of recording itself. *Id.* The Internal Affairs ("IA") investigation similarly found that Plaintiff's removal was not motivated by depriving him of his First Amendment rights to film. (ECF No. 38-1 at 10).

Because Plaintiff has not established a clearly established right to record inside a restricted, nonpublic area of a police facility, and because the record does not support that Roman's conduct was substantially motivated by Plaintiff's attempted recording, Roman is entitled to qualified immunity, and summary judgment is GRANTED as to this claim.

2. <u>Fourth Amendment Excessive Force</u>

As the Magistrate Judge found, and as the Court's own de novo review of the same summary judgment record confirms, Roman is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive-force claim.

An excessive-force claim requires an injury resulting directly and only from force that was clearly excessive to the need judged from the perspective of a reasonable officer on the scene and considering the totality of the circumstances. Brief physical contact while escorting a noncompliant person from a restricted area does not automatically constitute excessive force. *Supra* Legal Standards Section E.

The record before the Court includes surveillance footage submitted with both Roman's Motion to Dismiss, ECF 28, and the supplemental video exhibit submitted with the Defendant's

summary judgment briefing. (ECF No. 38-1 at 3) (Exhibit B1). The footage shows Roman reaching for Plaintiff's arm, Plaintiff pulling his arm away from Roman, then Roman placing his hand on Plaintiff's lower back to guide him from the restricted area toward the lobby while Officer Lauritzen held the door open. (ECF No. 38-1 at 11–13) (still frames time-stamped 16:06:54). The footage shows no grabbing motion beyond the unsuccessful initial reach, no forceful shove, and no collision with any wall or fixture.

Two separate sources corroborate the account. First, the Declaration of Dulce Gonzalez, Del Rio Police Department's IA Investigator, states under penalty of perjury that she personally reviewed the recordings and concluded that "Capt. Roman did not assault Rodriguez," that "Capt. Roman attempted to grab Rodriguez's arm, but he moved his arm; therefore, no pulling of the arm occurred," and that the resulting contact was "justified within the use of force continuum of the Del Rio Police Department." (ECF No. 38-1 at 2 ¶ 4).

Second, Texas Ranger Michael Martin, independent of the Del Rio Police Department, separately reviewed all three camera angles of the incident and reached the same conclusion, documenting that "no assault had taken place against Rodriguez from Captain Roman." (ECF No. 38-1 at 10) (IA Memorandum at 4). Ranger Martin's report further documents that Plaintiff, when asked directly, denied having any medical records reflecting an injury, denied possessing photographs of any injury, and denied observing any redness or bruising to the affected area. *Id.*

The video evidence contains an additional, independent basis that undermines Plaintiff's claimed injury. The IA Memorandum documents that Plaintiff was observed explaining the incident to a bystander who was waiting in the lobby by "moving both arms up and swinging his arms to depict the incident," demonstrating unrestricted range of motion in both arms. (ECF No. 38-1 at 8). Minutes later, upon the arrival of paramedics, Plaintiff was observed "pointing at his

left arm, which was now mostly immobile." *Id.* This noted change in the presentation of Plaintiff's alleged injury, from a demonstration where he had full mobility and indicated no pain to sudden immobility coinciding with the arrival of emergency responders, is materially inconsistent and further weakens the reliability of Plaintiff's account for purposes of this motion.

The record does include subsequently obtained medical imaging: an X-ray taken the day of the incident showing no acute findings, ECF 40-4, and an MRI performed approximately six months later showing a rotator cuff tear, ECF 40-5. That same MRI, however, undermines rather than supports a finding that this injury was caused by the October 2, 2023, encounter. An excessive force claim requires that the plaintiff's injury result "directly and only" from force that was clearly excessive and clearly unreasonable. *Supra* Legal Standards Section E. Plaintiff has offered no expert or other competent medical evidence linking the contact shown on the video to the rotator cuff tear identified in the MRI. Absent this evidence, Plaintiff has not established the causation element of his excessive force claim. This stands separate from the Court's primary finding that the force used was not excessive.

When video and independent investigative evidence discredit a plaintiff's account, a court views the facts as they are depicted rather than as alleged. *Supra* Legal Standards Section A (citing *Shepard v. City of Shreveport* and *Carnaby v. City of Houston*). Plaintiff's reliance on *Durant v.* Brooks, 826 F. App'x 331 (5th Cir. 2020), is not applicable here. There, the Fifth Circuit affirmed the denial of qualified immunity because the parties presented materially different, unresolved accounts of the officer's use of force. *Id.* at 335. In contrast to *Durant,* the present case, via the video evidence, the IA investigation, and the independent Texas Ranger investigation, converges on an identical narrative, thereby eliminating any genuine dispute of material fact. Additionally, because the Court's conclusion rests on independent record evidence rather than on *Carter v.*

*Dupuy*, Plaintiff's objection distinguishing that case does not alter the outcome. As such, after a de novo review of this record, the Court finds that the Plaintiff has failed to present any competent evidence to support their position, only unsupported characterizations mentioned in his Objections, that creates a genuine dispute as to what the video and independent investigations show. *Supra* Legal Standards Section C (citing *Beck v. Tex. State Bd. of Dental Exam'rs* and *Michalik v. Hermann*).

The Court emphasizes that it's ruling only pertains to the civil summary judgment record currently before it. The IA Memorandum reflects that a related criminal matter remains pending grand jury review, ECF 38-1 at 10, and nothing in this Order expresses any view on that separate proceeding.

Because the record establishes that Roman's use of force was, at most, de minimis and objectively reasonable under the circumstances; and because Plaintiff has independently failed to establish that his diagnosed injury was caused by that force rather than by a pre-existing ailment or other conditions that presented after this incident, Plaintiff cannot overcome Roman's assertion of qualified immunity. Summary judgment is GRANTED as to Plaintiff's Fourth Amendment excessive-force claim against Roman.

3. Fourteenth Amendment Denial of Medical Care

A claim for denial of medical care must demonstrate that the official knew about facts suggesting a significant risk of serious harm and disregarded that risk. As a preliminary point, Plaintiff was never in custody or under arrest at any point during the encounter, and the constitutional guarantee at issue generally applies to pretrial detainees and arrestees. (ECF No. 38 at 9 n.43) (noting Plaintiff was never in Roman's or the City's custody).

Even if the claim were to proceed based on these facts, the record establishes that medical care *was* provided. The video and IA Memorandum reflect that, upon Plaintiff's request, an ambulance was summoned, and EMS personally arrived and evaluated Plaintiff on-site within minutes. (ECF No. 38-1 at 9) (IA Memorandum at 2–3) (ECF No. 28-1, Exhibit A5). Plaintiff was then transported to Val Verde Regional Medical Center, where he was examined and received an X-ray. (ECF No. 40-4). Deliberate indifference requires more than a disagreement over who personally provided care or the adequacy of that care; where care was promptly rendered, no reasonable jury could find that any Defendant disregarded a known risk of serious harm. *Supra* Legal Standards Section F.

It has been well established here that medical care was promptly requested and provided, and as such; Roman is entitled to summary judgment on Plaintiff's denial of medical care claim.

**B. Defendant Doe – Fourteenth Amendment Failure to Intervene**

Defendant Doe is entitled to summary judgment on Plaintiff's failure to intervene claim. A constitutional failure-to-intervene claim requires that the bystander officer had a reasonable opportunity to prevent and knowingly failed to act. *Supra* Legal Standards Section G. Because the Court has concluded above that Roman's use of force was not excessive and did not violate Plaintiff's Fourth Amendment rights, Plaintiff's failure to intervene claim fails as a matter of law on that basis alone.

The record independently supports dismissal on a second, distinct basis. The summary judgment record identifies the officer present during the encounter as Officer Lauritzen, who is depicted in the video stills holding the metal door open while Roman guided Plaintiff toward the lobby. (ECF No. 38-1 at 11). Plaintiff's Original Complaint, ECF 1, refers only to an unidentified "John Doe" officer and provides no factual allegations connecting this individual to any specific

act or omission beyond a general presence at the scene. Plaintiff has had the opportunity through discovery and through his response to the Defendant's dispositive motions to identify and substitute the proper party and has not done so.

Because there is no underlying constitutional violation for Doe to have failed to prevent, and because Plaintiff has failed to adduce evidence identifying Doe or connecting him to any specific unconstitutional act, summary judgment is GRANTED as to Plaintiff's failure to intervene claim against Defendant Doe.

**C. Defendant Ramirez**

First Amendment retaliation claims require protected activity, a severe injury substantial enough to cease the protected activity, and a causal link between that activity and the defendant's adverse action. *Supra* Legal Standards Section D. Here, no evidence has been presented to the Court that shows where Ramirez was present during the October 2, 2023, encounter, that he took any action against Plaintiff, or that he was even aware this incident had occurred. The only factual allegation connecting Ramirez to this action is a citizen complaint Plaintiff made in 2015 which predates Ramirez's tenure as Chief of Police. (ECF No. 26 at 6–7) (citing ECF No. 1 ¶¶ 36, 37, 39, Ex. E).

In regard to Plaintiff's Complaint asserting supervisory liability against Ramirez under 42 U.S.C. §1983, that claim independently fails. Supervisory liability is predicated on a subordinate's constitutional violation. *Supra* Legal Standards Section H. Because the Court has concluded that Defendant Roman committed no constitutional violation in any of Plaintiff's claims against him, it logically follows that there is no legal basis with which to hold Ramirez liable in a supervisory capacity.

Finally, to the extent Plaintiff's *Monell* allegations implicate Ramirez as a policymaker, the record establishes that he is not a policymaker for purposes of municipal liability. The Del Rio City Charter and Code of Ordinances, of which the Court takes judicial notice under Federal Rule of Evidence 201, vest final policymaking authority in the City Council, *not* the Chief of Police. Del Rio City Charter § 22 (Administrative Departments); Del Rio City Code of Ordinances ch. 2 art. II, § 2–23; ch. 22, §§ 22–27 to 22–29.

Because the record establishes no involvement by Ramirez in the underlying incident, no constitutional violation by any of his named subordinates to support supervisory liability, and no policymaking authority, summary judgment is GRANTED as to all claims against Ramirez.

**D. City of Del Rio - *Monell***

An official policy or custom issued by a final policymaker that caused a constitutional violation can substantiate municipal liability. *Supra* Legal Standards Section I. As previously demonstrated, no constitutional violation occurred; as a result, the claims against the City fail as a matter of law.

Plaintiff's failure-to-train or failure-to-supervise theories are weakened by the evidence. Plaintiff asserts that the training and supervision of DRPD is lacking and wanton. However, the evidence shows the process described throughout is both functioning and responsive. For instance, Corporal Wilson investigated Plaintiff's traffic-cone complaint, visited the location, photographed the scene, and coordinated with the school and the City's Street Direct regarding permitted signage. (ECF No. 38-1 at 16–22). DRPD again demonstrated responsiveness and self-initiative when Plaintiff subsequently raised the alleged assault; Investigator Gonzalez opened a formal internal affairs case despite the absence of an official complaint, reviewed the video evidence, and documented her findings in a written memorandum. (ECF No. 38-1 at 7–10). Beyond the DRPD,

even the Texas Rangers independently reviewed the incident a second time and agreed with Investigator Gonzalez's report and conclusion. (ECF No. 38-1 at 9–10).

Plaintiff's pattern-or-practice theory rests entirely upon a single, vaguely described prior incident involving a different Captain approximately eight years before the events at issue. One dissimilar incident from nearly a decade earlier does not establish the "sufficiently numerous prior incident" bearing "similarity and specificity" required to demonstrate deliberate indifference. *Supra* Legal Standards Section I.

Because there is no constitutional violation to substantiate municipal liability, and the record clearly shows a responsive, not indifferent, training and supervisory process, summary judgment is GRANTED as to Plaintiff's *Monell* claim against City of Del Rio.

## IV. RELATED PROCEEDINGS

The Court notes that Plaintiff has pending criminal proceedings in the State of Texas arising from some of the same factual allegations underlying this civil action. (*See* ECF No. 26 at 3 n.20) (Defendants' Motion to Dismiss, disclosing *State of Texas v. Arturo Rodriguez*, Case Nos. 24-072-CR, 24-431-CR, 24-432-CR and 24-433-CR; ECF 38-1 at 4 (noting the related criminal investigation remains pending grand jury review). Neither party has briefed the effect, if any, of those proceedings on this action. Because Plaintiff's claims seek only monetary relief the existence of ongoing state criminal cases does not prevent this Court from addressing Plaintiff's civil claims on their merits. *Deakins v. Monaghan,* 484 U.S. 193, 202 (1988). This Order resolves only the civil claims properly before the Court on the summary judgment record and expresses no view on the pending state criminal matter or its eventual holding.

## V. CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED** as follows:

1. Plaintiff's Objections, ECF 46, are **OVERRULED** for the reasons set forth above;
2. The Report and Recommendation of the Honorable United States Magistrate Judge Joseph A. Cordova, ECF 44, is **ADOPTED** in full;
3. Defendants' converted Motions for Summary Judgment, ECF 26 and 28, are **GRANTED;**
4. Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE;**
5. A final judgment will be entered separately pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**SIGNED**, this 23rd day of September 2026.

Ernest Gonzalez

ERNEST GONZALEZ
UNITED STATES DISTRICT JUDGE